553 A.2d·1020

Lincoln Intermediate Unit No. 12 and Tuscarora School District, Petitioners *v.* Commonwealth of Pennsylvania, Department of Education et al., Respondents.

Argued November 1, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Paul L. Stevens,* with him, *Andrew E. Faust* and *Curtin and Heefner,* for petitioners.

*Mary B. Seiverling,* Deputy Attorney General, with her, *John G. Knorr, III,* Chief Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

*Michael I. Levin,* with him, *Frank P. Clark* and *Cleckner and Fearen,* Amicus Curiae, for Pennsylvania School Boards Association.

OPINION BY JUDGE CRAIG, January 25, 1989:

Lincoln Intermediate Unit (LIU) and Tuscarora School District have moved for peremptory judgment in mandamus, asking this court to compel the Pennsylvania Department of Education (DOE) to comply with statutes and regulations governing special education and to approve or disapprove LIU's plan amendments and budget for the 1988-1989 school year without regard to DOE's funding allocations or other fiscal restraints.

Senior Judge BUCHER of this court denied the petitioners' motion for peremptory judgment on September 1, 1988. LIU sought review of Judge BUCHER's decision under Pa. R.A.P. 123(e).

The questions we must address are: (1) whether DOE has failed to comply with the department's regulations and (2) whether DOE may consider its funding allocations in making a decision to approve or disapprove intermediate unit plan amendments and budgets.

LIU submitted plan amendments and estimated costs of implementing LIU's plan for the 1988-1989 school year in March, 1988. At approximately the same time, LIU developed a budget for the 1988-1989 school year. In May 1988, DOE sent to LIU and all other intermediate units a memorandum that assigned to each intermediate unit funding allocations that reflected the overall state funds available for special education.

In that memorandum, DOE included instructions for the submission of plan amendments stating that "prior to submission of budgets to [DOE]", each unit and school district should amend their combined plan "to accommodate 1988-1989 funding resources." The instructions added that "the combined net intermediate unit and member school district budgetary payment requests for state special education funding may not exceed the allocation ... ."

The memorandum includes a description of the budgetary review process:

PDE [DOE] review of combined budgets of each intermediate unit and its member school districts will determine whether the budgets are, *as a whole* (a) consistent with the intermediate unit plan, as that plan includes programs for which state funding is being sought, and (b) within the allocations available. If the combined budget fail to satisfy either condition (a) or (b), or both, they will be disapproved for state funds. (Emphasis added.)

Petitioners contend that peremptory judgment is appropriate in this case because the memorandum and DOE policy contravene the special education statutes and DOE's regulations, and that LIU therefore has a clear legal right to relief. LIU also asserts that, because DOE allegedly has not followed department regulations that require discussion of plan amendments before notification of disapproval of the amendments, the administrative remedies available are inadequate.

DOE claims that peremptory judgment is not appropriate because: (1) there are several facts in dispute; (2) DOE acted within the statutory and regulatory framework; and, (3) the petitioners have not exhausted the administrative remedies available to them.

This court will grant a motion for peremptory judgment only if the rights of the petitioner are clear—that is, only if the petitioner is entitled to judgment as a matter of law. *Aiken v. Radnor Township Board of Supervisors,* 83 Pa. Commonwealth Ct. 190, 476 A.2d 1383 (1984); Pa. R.C.P. No. 1098. Because granting or denying a motion for peremptory judgment involves the application of law to undisputed facts, we will grant a motion for peremptory judgment only when no issues of material fact exist. *Shaler Area School District v. Salakas,* 494 Pa. 630, 432 A.2d 165 (1981); *Wolgemuth v. Kleinfelter,* 63 Pa. Commonwealth Ct. 395, 437 A.2d 1329 (1981).

A court may issue a writ of mandamus to compel the performance of a ministerial act or mandatory duty only where a clear legal right exists in the petitioner, a corresponding duty rests with the respondent, and when no other adequate remedy exists. *Shaler.*

Petitioners assert that the applicable special education statutes and regulations require DOE to base approval or disapproval of plan amendments and budgets solely on programmatic criteria, and that DOE may not

disapprove proposed amendments or the budget required to implement the amendments if the amendments address actual programmatic needs.

Although LIU is correct in stating that DOE has disapproved some plan amendments that admittedly relate to programmatic needs when the cost of implementing those plans exceeds available overall funding, the pleadings, affidavits and exhibits do not clearly establish that DOE has rejected plan amendments solely because a plan exceeds available funds.

DOE claims that fiscal considerations are only one factor in DOE's decision-making process, despite language in DOE's plan amendment instruction that states that payment requests should not exceed the established allocation. DOE states in its brief that that language is precatory and not mandatory.

The memorandum instructs the intermediate units to "accommodate" funding resources in developing plans for the school year. Then DOE conditions approval of the submitted budget on whether or not the budgets are "as a whole" *consistent* with the *approved* plan and within the amount of funds available for special education.

The applicable statutes do not preclude DOE from considering fiscal restraints as a factor in making a decision to disapprove an intermediate unit's plan or budget. Section 2509.1 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §25-2509.1, requires the Commonwealth to pay intermediate units directly for the costs of educating exceptional children. In turn, for each exceptional child in an intermediate unit program, the school district in which an exceptional child resides must reimburse the Commonwealth the amount the district would have to pay to educate a regular child. In essence, the Commonwealth pays the difference in costs of education between an exceptional child and a normal child regard-

less of whether the school district or an intermediate unit educates a child. The statute directs the Commonwealth to pay an intermediate unit on August 1 of each year "a sum equal to one-half of the *approved* estimated annual cost of operation and administration of classes and schools for exceptional children". (Emphasis added.)

Intermediate units administer special education programs and services in accordance with the intermediate unit's plan for special education as directed by Section 1372(2) of the Public School Code, 24 P.S. §13-1372(2):[1]

> **Plans for Education and Training Exceptional Children.** Each intermediate unit, cooperatively with other intermediate units and with school districts shall prepare and submit to the Superintendent of Public Instruction, on or before the first day of August . . . for his approval or disapproval, plans for the proper education and training of all exceptional children in accordance with the *standards and regulations adopted by the State Board of Education*. Plans as provided for in this section shall be subject to revision from time to time as conditions warrant, *subject to the approval of the Superintendent of Public Instruction*. (Emphasis added.)

As authorized by that statute, the State Board of Education has adopted regulations at 22 Pa. Code §§341.32-341.35 that address the development, content, and approval of intermediate plans. Section 341.35(b) provides the criteria that should be used to determine whether an intermediate unit has complied with the terms of 22 Pa. Code §§341.32 and 341.33.

Thus, an intermediate unit must comply with §341.33 before DOE can approve a plan. Section 341.33 directs intermediate units to assign priorities to the needs of an

---

[1] 22 Pa. Code §341.31.

intermediate unit's programs. Although not explicitly stated, one obvious reason DOE requires an intermediate unit to assign priorities to programmatic needs is that DOE must develop a method of distributing, on an equitable basis, the funds the general assembly has appropriated for special education.

If we were to accept LIU's argument that fiscal restraints should not be considered, we would also have to question the substance of the applicable statutes and regulations, which essentially mandate *minimum* special education requirements and direct school districts and intermediate units to provide services first to those children who are "more severely handicapped before programs are provided for the less severely handicapped ...." 22 Pa. Code §341.33(3)(i). DOE must consider the reality of funding allocations because the legislature has not appropriated enough money to enable intermediate units and school districts to implement every desirable program an intermediate unit or school district would like to include in their special education formats.

The statutes and regulations require DOE to approve budgets that are reasonably consistent with the *approved* intermediate unit's plan amendments. Therefore, DOE must approve an intermediate unit's plan before the department can approve the intermediate unit's budget.

LIU suggests that peremptory judgment is appropriate in this case because DOE's alleged failure to implement the department's regulations· concerning disapproval of plans and notice and hearing causes the administrative remedies, although ostensibly available, to be inadequate. DOE argues that LIU did not raise this issue in the petition for review. We disagree. LIU asks this court in the petition for review to compel DOE to comply with *all* of the special education statutes and regulations. The special education regulations prescribe a particular

procedure to be followed when DOE disapproves plan amendments. Because the procedure outlined in those regulations is the appropriate remedy available to intermediate units that disagree with DOE's disapproval decision, if DOE does not follow the procedure, the administrative remedies allowed by law are effectively unavailable. Thus, LIU's claim that administrative relief is inadequate due to DOE's non-compliance with the regulations is directly related to LIU's requested relief.

The regulations relating to disapproval of plans provide:

> (c) **Disapproval.** Plans which do not meet the requirements of §§341.31 and 341.32 will be disapproved. Prior to disapproval, appropriate division personnel will discuss the plan and suggest modifications with appropriate intermediate unit or school district personnel, or both.

> (d) **Hearing.** If a plan is disapproved, the intermediate unit shall be entitled to a notice and a hearing under 2 Pa. C. S. §§501-508 and 701-704 (relating to Administrative Agency Law) and 1 Pa. Code Part II (relating to general rules of administration and procedure).

22 Pa. Code §341.35. LIU argues that DOE has not complied with subsection (c) because DOE allegedly did not discuss the plan amendments with LIU before disapproving the plan amendments.[2] LIU also claims in its petition for review that in two previous years LIU requested a hearing as allowed by 22 Pa. Code §341.35(d) after DOE disapproved plan amendments LIU submitted, but that DOE failed on both occasions to provide a hearing.

---

[2] DOE claims to have discussed the disapproved amendments with LIU on August 30, 1988. *See* the affidavit of Bernie Manning attached to DOE's brief as Exhibit "D".

If the allegation implicit in this claim is true—that DOE makes a practice of not providing a requested hearing as required by the regulation, then LIU's argument has merit because the denial of LIU's right to a hearing effectively deprives LIU of a final determination that could be appealed to this court. *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981). In the petition for review, however, LIU averred only that DOE failed to provide a requested hearing in past years. LIU does not claim that in the present year LIU requested a hearing or that DOE failed to provide a hearing.

Nevertheless, if LIU is correct in asserting that DOE did not discuss the plan amendments before notifying LIU of disapproval, then peremptory judgment could be granted for the limited purpose of compelling DOE to discuss the plan amendments with LIU *before* DOE disapproves the plan—a mandatory procedure required by 22 Pa. Code §341.35(c).

Because LIU and DOE dispute whether the required discussion took place before DOE disapproved the plan amendments, an evidentiary hearing for determination of this matter may be required.[3] If DOE failed to discuss the plan amendments, DOE must comply with this requirement *before* disapproving the plan amendments, and then DOE must provide a hearing if LIU requests one. If, on the other hand, DOE did discuss the plan before notifying LIU of the department's decision to disapprove LIU's plan amendments, then DOE has com-

---

[3] In applying Pa. R.C.P. No. 1098, this court may order an evidentiary hearing in order to determine that the factual basis for decision is clear. *Board of Commissioners of Montgomery County v. Lukens,* 51 Pa. Commonwealth Ct. 576, 415 A.2d 118 (1980) , *aff'd* 494 Pa. 64, 428 A.2d 972 (1981). Of course, if a hearing is sought, it could serve as a final hearing in mandamus.

plied with the department regulations and LIU should have requested a hearing upon notice of disapproval.[4]

Judge BUCHER's denial of peremptory judgment will be confirmed.

## ORDER

NOW, January 25, 1989, denial of petitioners' motion for peremptory judgment is confirmed.

---

[4] LIU avers that the notice provided by DOE was inadequate. Although 22 Pa. Code §341.1 requires that notice be written, the definition does not define the content of the notice required. However, in light of the fact that DOE must discuss disapproval before notification, the two provisions provide sufficient notification if DOE complies with both §341.35(c) and (d).